DONALDSON, Judge.
This court's opinion of May 5, 2017, is withdrawn, and the following is substituted therefor.
Alabama Power Company ("Alabama Power") appeals the judgment entered by the Jackson Circuit Court ("the trial court") establishing a boundary line and adjudicating claims regarding certain disputed areas of property in Jackson County. The judgment of the trial court described the proceeding as one to determine the boundary line between property owned by Alabama Power and property owned by Ray Keller, ostensibly as coterminous landowners. The record establishes, however, that Alabama Power and Keller are not record title owners of coterminous properties in some of the disputed areas. "Parties to a boundary line dispute action must be coterminous owners, and equity is without jurisdiction in such a proceeding unless the complainant owns land adjoining respondent's at the disputed boundary." Walls v. Bennett, 268 Ala. 683, 686, 110 So.2d 277, 280 (1959). To the extent the judgment purports to establish *52 a boundary line where Alabama Power and Keller are not coterminous landowners, we hold that the trial court did not have jurisdiction to do so and that, accordingly, that portion of its judgment is void. Therefore, we dismiss the appeal insofar as it pertains to that portion of the judgment. We affirm the portion of the judgment establishing a boundary line in that part of the disputed areas in which the parties are coterminous landowners.
Facts and Procedural History
On July 28, 2016, the trial court entered a lengthy and detailed judgment, a portion of which states:
"First and foremost, this is a land line or boundary line case. This case also requires the court to consider claims, counterclaims, or issues concerning statutory, prescriptive, and/or hybrid adverse possession.
"....
"I. Introduction:
"The disputed real property boundary in this case is located in Tate's Cove, a narrow, remote, picturesque valley branching off Big Coon Cove in Jackson County, Alabama. [Keller's] property is more than 700 acres and is almost completely surrounded by [Alabama Power's] holdings of more than 15,000 acres. The properties feature mountains, boulders, hollows, draws, sinks, diverse plant and animal life, caves, creeks, wildlife, cultivated lands, evidence of human habitation and use, and timber lands-all the flora, fauna and terrain typical of the Southern Appalachian Mountains.
"The complaint was filed June 26, 2007. Therein, Ray Keller asked the court to 'judicially determine and declare the common boundary line between the parties.' Doing so is not a task the court takes lightly. The seriousness of this undertaking caused the court to view the property on three separate occasions....
"The parties share about four and one-half (4.5) miles of common boundary and about one and one-half (1.5) miles of that common boundary is in dispute. The disputed portion will be determined in this case. The court has walked the majority of the area where the common boundary is in dispute, particularly in the most rugged and mountainous areas where driving is impossible. The court, riding with counsel on three occasions, has driven on or in the vicinity of the remainder of the disputed boundary where roads were maintained and were passable. The court made a thorough examination of the proffered boundaries on the ground.
"This is not the first occasion where the court has been called upon to determine a boundary between adjoining landowners with large, rural and remote holdings, but this case stands out to the court due to the size and scope of the undertaking and the fact that the first survey of the property did not occur until 2006, was done in conjunction with this litigation, and was done more than 60 years after some of the land was first divided between Mr. Keller's and Alabama Power's respective predecessors in title.
"....
"II. The Areas in Dispute ... :
"In fashioning this boundary, the court will necessarily determine who owns some or all of the following areas in the vicinity of the Eastern and Northern boundaries of Section 31, as well as in the Northeast Quarter of the Northeast Quarter of Section 31.
"i. The lands West of the Cave Spring Branch in the Northeast Quarter *53 of the Northeast Quarter of Section 31 (Part of the 'Middle Disputed Parcel');
"ii. The lands that are East of the Cave Spring Branch and South of a line that runs East from the 'Cable Anchor Post' and/or 'Gate' and continues to the East boundary of Section 31, as located and described by the Rymeg drawing, including the Bubble-Up,[1 ] in the Northeast Quarter of the Northeast Quarter of Section 31 (Part of the 'Middle Disputed Parcel');
"iii. The lands that are South of the 'Old Management Area Sign Line,' including the Large Cave, as the same runs West from Cave Spring Branch, up the mountain and South of the Small Cave to the blazed tree, and along the 'Sign Line' until it terminates at the Painted Rock Pile (The 'Northern Disputed Parcel'); and,
"iv. The lands West of the Creek in the Southwest Quarter of Section 32-which includes the cultivated lands (The 'Southern Disputed Parcel').[2 ]
"....
"III. Claims and Contentions:
"For purposes of this case, both parties acquired their properties in 1988.
"Plaintiff Keller claims a boundary based on a 1942 deed in Alabama Power's chain of title and a 1953 deed in his chain of title, as well as ownership and possession consistent with that 1942 division at all times since. Both conveyances are from the same grantors, Jim Davis and Anna Davis, who were husband and wife.
"The 1942 deed in Alabama Power's chain includes calls that are 'west to creek, 'up the Cave Branch to the cave,' 'along a blazed line,' and 'all lines or [sic] established by agreement with both partys [sic].' The 1942 deed includes lands that are in the Northeast Quarter of the Northeast Quarter of [Section] 31, but not the entire Quarter-Quarter section.
"The 1953 deed in Mr. Keller's chain purports to convey the Northwest Quarter of the Northwest Quarter of Section 31, but includes specific calls that encompass a larger area, including lands that are in the Northeast Quarter of the Northeast Quarter of [Section] 31, specifically: 'with a blazed line which is bounded on the North by the property belonging to Frank Evans and running to a blazed tree on top of the cave,' 'south eastwardly with the meanderings of the cave branch,' 'west with a line which is bounded on the south by the lands of T.R. Allison,' and 'North with a line which is bounded on the west by the lands of T.R. Allison.'
"Mr. Keller claims that he and his predecessors in title are the rightful owners of the disputed lands pursuant to the original deeds, the agreed boundaries reflected in the 1942 and 1953 deeds, and ownership and possession *54 since 1942 (at the latest) even if the deeds in his chain are not artfully crafted and do not always rightly describe the disputed lands.[3 ] Mr. Keller alternatively claims he owns the disputed lands by adverse possession, during his ownership or prior to his ownership by his predecessors.
"Mr. Keller claims that Alabama Power's deed to the disputed areas in the Northeast Quarter of the Northeast Quarter [of Section 31] is color of title only based on the 1942 division of the property and that Alabama Power has not adversely possessed anything West of the Creek, South of the East-West line above the Bubble-Up, or South of the Old Management Area Sign Line to include the Big Cave.
"Alabama Power claims the boundary is a line painted by Alabama Power in the 2000s and painted, at least in part, by its predecessors in the early 1980s. The power company says this boundary closely corresponds to what is conveyed on the face of its 1988 deed and that it also closely corresponds to the government survey line as shown by its 2006 survey of the same. While the original deed in Alabama Power's chain (the 1942 deed) does not convey the entire Northeast Quarter of the Northeast Quarter of Section 31, a later deed in the chain includes that entire Quarter-Quarter section. Specifically, a 1959 deed from Frank Evans and Bessie Evans to H.R. Campbell purports to convey the 'NE 1/4 of the NE 1/4 of Section 31 ... being all the land owned by the grantors in Tate's Cove.'
"Defendant Alabama Power claims that it owns everything conveyed or purported to be conveyed on the face of its deed and that any title defect was remedied by statutory adverse possession based on color of title and by assessing the disputed lands for taxation in addition to satisfying the traditional, common law elements of adverse possession.
"Alabama Power claims that Mr. Keller is not entitled to prevail on a hybrid adverse possession theory because he seeks too much of Alabama Power's property and, further, that he cannot prove common law adverse possession or statutory adverse possession because he cannot achieve the twenty (20) year period required for the common law variety and because he is not entitled to the shorter ten (10) year period for statutory adverse possession because he did not assess the land for taxation nor does he have color of title.
"Alabama Power additionally claims that Mr. Keller cannot adversely possess lands that are leased to the State of Alabama for the public's use."
In the judgment, the trial court described portions of the extensive testimony taken at trial and its visits to the disputed *55 parcels. The judgment recounts testimony regarding markers, monuments, landmarks, previous owners of the parties' properties, and activities of people and organizations in the disputed parcels. The following portions of the judgment are the descriptions of testimony relevant as background information or pertinent to the issues considered in this appeal:
"[Keller] called Bruce Allison.... [Mr. Allison] said that his father, Earl Allison, used to own 720 acres, the same property which Mr. Keller now owns and/or claims. He said that the farm of his grandfather, Thomas Russell (T.R.) Allison, adjoined the subject property. In 1988, Earl Allison lost the property to a mortgage foreclosure. The property was sold at a 'courthouse sale,' where it was purchased by the State of Alabama. A very short time later, the Plaintiff Ray Keller and his business partner, Billy Gordon Sanders, acquired Earl Allison's right of redemption, pursuant to former Ala. Code [1975,] § 6-5-246....
"The Allison property was redeemed and conveyed from the State of Alabama to Mr. Keller and Mr. Sanders by deed dated June 13, 1988.[4 ]...
"....
"Gary Allen Nichols testified that he had leased the Big Coon property from Mr. Keller since 2005 and that he was the one who built the gate above the Bubble-Up ... in the spring of 2006 and painted it yellow. He built it where the old gate and cable were located, at the spot where there were old State management area signs marking the line. Mr. Nichols stated that he never hunted on the upper side of the gate because 'it was wildlife management area land.' Later, he discovered that the gate was removed, apparently knocked down by a boulder pushed against it with a bulldozer or other heavy equipment. That boulder was left in the road to block it.
"Mr. Nichols testified that there are old signs all along the route up the trail to the caves and that the club members hunt up to the State signs, including during the most recent hunting season. He stated that the old wildlife management area signs were all the way to the caves and testified that 'the big cave is on' Ray Keller's hunting land. He said that at the end of 2006 someone took down twenty or more of the wildlife management area signs and stacked them at his hunting cabin. He said that he did not know where they came from and had been unable to learn from anyone else whence they came. Mr. Nichols said that he saw the trees where the old signs were broken off and that some of them could be matched up to the tree where they were removed, like pieces of a puzzle. On cross-examination he said that he had never noticed the red paint which Defendant Alabama Power says is its line until the boulder was used to knock down the yellow gate and block the road....
"Scotty Fleming then testified for [Keller]. He is a professional forester, the owner of Tri-State Timber Company, L.L.C. and lives at Pisgah, Alabama. His main customer is the Plaintiff Ray Keller.... Mr. Fleming testified that no one had told him about the red paint on the lines until he discovered them himself and that he had seen no red paint there previously. Mr. Fleming testified that he had moved the boulders which were blocking the road and that the boulders were located exactly where the *56 red line came down to the road. He said that he covered up approximately one mile of the red painted line, because the red marks did not represent what he understood was the true and correct line. He testified that he assumed the hunting club had marked it, and marked it erroneously. He believed that he was well within his rights as Mr. Keller's representative and contractor to remove what were erroneous boundary lines. Mr. Fleming later returned and marked what he thought was the boundary line. Now, upon further reflection, he believes the line he painted was in error and is not the true boundary line, either.
"This testimony proves nothing other than why he should not have painted over the old line in the first place. Whether Mr. Fleming's changing boundary line beliefs are sincere or unscrupulous is not known by the court....
"The Plaintiff's Exhibit 5, a deed from Jim Davis and wife Annie [Davis] to T.R. Allison, dated January 8, 1953, describes the line as 'to a blaze tree line' at the top of the cave and southeast with the meanderings of the cave branch. Mr. Fleming believes this to be the true line. Mr. Fleming further testified that when he obliterated the red paint marks (which were apparently painted by Alabama Power Company), that no old paint marks were present. He insisted that he only painted what he knew were fresh paint marks. He further testified that he would never paint over an old line, but that he would paint over a new line that he believed was erroneous. He stated that he would not remove a historic line, [but] it never occurred to him to call Alabama Power Company officials to discuss the fresh red painted line or the gate being bulldozed down. He said that he thought that these were acts of vandalism and the acts of a rogue hunter, not the acts of Alabama Power Company....
"Thomas Cook testified for the Defendant Alabama Power. He is a Biologist Aide Senior with [the Alabama Department of Conservation and Natural Resources ('ADCNR') ], employed with it for twenty-seven years. He painted the boundary lines of Holland Ware's property in 1983. He was hired to do so by Wade Manning, an official with the ADCNR, but was paid by Holland Ware individually. He testified that he did not paint the west line of the Northeast Quarter of the Northeast Quarter at that time. Instead, he painted the west line of the Northwest Quarter of the Northeast Quarter in Section 31, which is land owned by Mr. Keller now and, at that time, his predecessors, the Allisons. While Mr. Cook's testimony is confusing about exactly what he painted and why, it is clear that he did not paint the boundary advanced by [Alabama Power] in this case and that he painted boundaries of lands that did not belong to his employer, Mr. Ware, or his successor in interest, Alabama Power.
"Mr. Cook stated that the line to paint was easy to find and that no one objected to his painting the line where he did in 1983. He said that in 2006, Frank Allen and Joe Worthen painted the line again on behalf of ADCNR....
"....
"Mr. Cook also explained the methodology of placement of Alabama Wildlife Management Area signs on trees.... He testified that wildlife management area signs are not always placed on property lines but are sometimes placed along interior roads so that people will know that they are on the management area. This testimony is important because some signs placed along alternative boundaries for the subject property *57 are not in keeping with this Alabama Power method of erecting signs. The strong implication is, of course, that someone deceptively used management area signs and red paint to mark a false boundary, a false boundary which strongly favored Ray Keller's position in this dispute and in this litigation. That 'someone' acted on Mr. Keller's behalf to move the boundary is alleged, but is not at all proven.
"... Mr. Cook testified that there had been at least two gates across the road at the Bubble-Up since 1984. He does not know who tore down the yellow gate, but admits that he placed the boulder there blocking the road at the direction of his supervisor, Frank Allen.
"[Alabama Power] next called G. Dwight Hawes [who] has been a licensed land surveyor in Alabama since 1983 ....
"On the north line of the Quarter-Quarter section, Mr. Hawes found, at the half mile marker, a rebar with plastic cap bearing Jim Sentell's mark. Mr. Sentell, another well-known Jackson County surveyor, set this monument in 2002 when he was performing work for Ray Keller. Mr. Hawes knows Jim Sentell well and recalls that, in fact, Mr. Sentell borrowed Mr. Hawes' handheld global positioning system (GPS) device to assist him in 2002. Mr. Hawes said that Ray Keller later called him and asked him not to use this piece of information in this litigation.
"....
"William Short, a local surveyor, testified for the second time in this case.... Mr. Short did the field work for a severance line description that was then drawn by Michael Hodges, his employer.... Mr. Short admitted that the severance line drawing was just a sketch he had done for Mr. Keller, and not a complete survey, but made clear to the court that based on his fieldwork and the Government Land Office field notes, he believes this severance line to be the true and correct boundary.
"Michael Hodges, local surveyor and owner of Rymeg Consulting Group, Inc., testified next. Mr. Hodges prepared the actual drawing of the severance line proposed by Mr. Keller, based on William Short's fieldwork. Mr. Hodges confirmed that his sketch or drawing of the severance line was based on Mr. Short's field measurements and the Government Land Office field notes, and that he believed the line to be the true and correct boundary....
"Jimmy Lee Ashley testified for [Keller] in a most notable fashion....
"... Jim Davis and Annie Davis, Jimmy Lee Ashley's grandparents, owned over 300 acres of land in Tate's Cove, including much of the disputed property now claimed by Alabama Power and Ray Keller to include the Big Cave and the Small Cave and the Bubble-Up.
"Jimmy Lee Ashley testified to his grandfather having sold part of the land to Frank Evans in 1942 and a contiguous parcel of land to T.R. 'Russ' Allison in 1953. These are the parties' respective predecessors in title....
"....
"Jimmy Lee Ashley's testimony is first hand and entirely credible. He is the sole surviving witness to the original division of the land by his grandfather. He is clear and certain that the Big Cave was on Mr. Keller's predecessors' land and that the small cave was on [Alabama Power's] predecessors' land with the line running between them. Also, that the ditch or the branch was the line and that it proceeded south to the Bubble-Up or head of the creek before turning East and going uphill to *58 a buggy axle. This first-hand account of the division of the land precisely matches [Keller's] claim regarding the location of the boundary, as well as the overwhelming evidence concerning the location of the boundary at all times since 1942 and 1953.
"....
"Alabama Power recalled G. Dwight Hawes, a licensed land surveyor in Jackson County....
"Mr. Hawes says that about 42 acres total comprises the area in dispute between these parties."
The judgment contains the following conclusions of law and grant of relief:
"Time and its passage favor Ray Keller's position in the case. The boundaries of the 1942 and 1953 divisions of this land have been observed for more than half a century and those divisions have been affirmed by occupancy and use of the land by Jim Davis, two generations of the Allisons spanning 35 years, and, since 1988, by Ray Keller.
"The court has walked over and upon the boundaries described in the Davis-to-Evans and Davis-to-Allison deeds, which boundaries are further explained by the very compelling testimony of Jimmy Lee Ashley, the only living witness to the original division of the land, as well as other sound witnesses with personal knowledge of the boundary since 1942. The caves, the creek bed, and the Bubble-Up are immovable objects that have withstood the test of time, the court cannot fathom any difference in these physical features from 1942 to the present. They are unchanged now and will be unchanged a hundred years hence, the acts of man notwithstanding. They are excellent, permanent monuments that simplify the court's decision. The court walked the boundary created without the benefit of any modern technology in the 1942 deed and reaffirmed in the 1953 deed.
"In addition, the court personally viewed the physical evidence on the ground, which evidence confirms that the court walk[ed] over and along the true and correct boundary. Signs nailed into and imbedded in trees, hacks and blazes in trees, old paint on trees, paint on rocks, all manner of fencing grown into old trees, fencing lying upon or buried in duff layer, various vintages of hunting club signs on the ground and in the duff layer, and various vintages of management area signs on the ground and buried in the duff layer run in concert with the physical features described above. These items show that generations of men, over 60-odd years, affixed items to the land consistent with an agreed and established boundary, that they placed these items in the exact area of the boundary, and that it is the same as the boundary claimed by [Keller] in this case.
"Further, at no time since 1942 has Alabama Power or any Alabama Power predecessor adversely possessed this rugged and remote ground so as to alter the historical and agreed boundaries. Alabama Power's claims to the contrary fail as Alabama Power's and its predecessors' acts on the land are sporadic and scrambling and do not satisfy the elements of adverse possession. This is confirmed by the court's views. Neither Alabama Power nor its lessee has adversely possessed any of these properties in dispute.
"....
"Regarding hybrid adverse possession by adjoining land owners, the Alabama Power Company argues that Ray Keller cannot proceed on a hybrid theory, whether by he or his predecessors, because he attempts to take too much of *59 the Alabama Power Company's property, which property the power company and its surveyor have quantified as a number of acres in dispute. While the court believes that simple mathematics reflect that as little as 2.7 thousandths (0.0027) of the Alabama Power Company's tract is in dispute in this case, even if taking the Alabama Power Company's assertions as true, the court believes this argument is critically flawed in three other respects.
"First, the Alabama Power Company only has color of title to the disputed lands in the Northeast Quarter of the Northeast Quarter of Section 31....
"Time considerations also apply to the Southern disputed parcel, which has been pastured, grazed, row cropped, and the like by Mr. Keller and his predecessors since before 1942, and for so long that any adverse use ripened into title decades ago. Since 1988, Alabama Power has not adversely possessed the property nor has it taken any other action to change this fact.
"Moreover, to the extent Alabama Power Company brings the Southern disputed parcel into dispute by offering the Hawes' survey and Mr. Hawes' testimony that the government survey lines in this part of the county are 'off' by as much as 500 feet and 'some of the worst he has seen,' the court declines to alter the boundaries of old based on the 2006 survey and accepts, instead, the testimony of Michael Hodges and William Short, surveyors themselves, who opine from their field work and the original survey notes, that the Section corner is on the Western bank of the creek, in the old WPA road, and is not several hundred feet West, in the middle of a cultivated field, as Alabama Power Company suggests. This is consistent with history, how the neighbors conducted themselves for generations, and what the court saw during the views.[5 ]
"....
"[Alabama Power's] claims of adverse possession fail on each and every level, without exception.
"Based on the ore tenus evidence over seven days of trial, based on the court's three views of the property, and based on the applicable law, the court adjudicates and declares the boundary between Ray Keller and Alabama Power to be the same or substantially the same as was deeded, conveyed, created, agreed, observed, and/or adversely possessed in remote Tate's Cove since Jim Davis sold property to Frank Evans [in] 1942-with his humble, but good and valuable milk-cow as consideration-and at virtually all times since then as far as the court can tell from the evidence and from its extensive three views of the property.
"....
"6. Any claim of any party not expressly granted or denied herein is denied.
"7. All other relief sought is DENIED.
"8. The court retains jurisdiction of this matter to effect the intent of the order."
On October 23, 2014, the last day of trial, Keller filed a motion in open court seeking to amend his pleadings to include a claim to reform the parties' deeds. Keller did not seek to add any additional parties to the litigation or seek to quiet title to any of the portions of the disputed parcels where the record title may have been held *60 by any other parties. On November 7, 2014, Alabama Power filed a posttrial motion opposing Keller's motion to amend the pleadings. Alternatively, Alabama Power sought to amend its pleadings to add the rule of repose as an affirmative defense if the trial court granted Keller's motion to amend the complaint to present a reformation claim. On April 2, 2015, the trial court conducted a posttrial hearing at which the trial court stated that it would allow Alabama Power to amend its pleadings to add the affirmative defense of the rule of repose if it allowed Keller to amend his pleadings to add a reformation claim. In the judgment entered on July 28, 2016, the trial court did not expressly grant Keller's motion to amend and stated that any claim not expressly granted was denied.[6]
On August 17, 2016, the trial court entered an order for the purpose of recording the judgment in the Jackson Probate Court. The order declares the boundary line between the properties of Keller and Alabama Power to be:
"A severance line within Section 31, Township 1 South, Range 6 East of the Huntsville Meridian in Jackson County, Alabama, and being more particularly described as follows:
"Commence at a planted rock at the Northwest corner of said Section 31 and run a tie line North 87 degrees 34 minutes East a distance of 1321.8 feet to a painted rock at the Northwest corner of the Northeast quarter of the Northwest quarter of said Section 31 and the true point of beginning, thence with the old 'Management Area' sign line North 82 degrees 55 minutes East a distance of 194.1 feet, thence North 85 degrees 34 minutes East a distance of 1067.5 feet, thence North 89 degrees 24 minutes East a distance of 1845.6 feet to the 'Cave Spring' branch, thence with said branch and ensuing creek South 52 degrees 21 minutes East a distance of 90.6 feet, thence South 03 degrees 46 minutes East a distance of 96.6 feet, thence South 29 degrees 29 minutes West a distance of 76.35 feet, thence South 70 degrees 50 minutes West a distance of 67.75 feet, thence South 31 degrees 38 minutes West a distance of 116.2 feet, thence South 14 degrees 00 minutes East a distance of 129.1 feet, thence South 15 degrees 53 minutes West a distance of 91.2 feet, thence South 25 degrees 13 minutes West a distance of 210.5 feet, thence South 00 degrees 10 minutes East a distance of 243.2 feet, thence South 22 degrees 59 minutes East a distance of 140.55 feet, thence leaving said creek North 87 degrees 42 minutes East a distance of 777.1 feet to the East boundary of said Section 31, thence with said East boundary South 01 degrees 02 minutes 30 seconds West a distance of 4146 feet to the Southeast corner thereof and the terminus of the severance line hereby described."
On August 29, 2016, Alabama Power filed a motion for new findings of fact and to alter, amend, or vacate the judgment or for a new trial. In the motion, Alabama Power made the following arguments, among others: that the action is an adverse-possession case and not merely a boundary-line dispute; that Keller failed to adversely possess the disputed parcels; and that Keller's claims are barred under the doctrine of unclean hands.
On September 7, 2016, Alabama Power filed a notice of appeal to the supreme *61 court. On September 22, 2016, the trial court entered an order denying all posttrial motions. At that time, the notice of appeal became effective. See Rule 4(a)(5), Ala. R. App. P. ("A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions."). The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Discussion
"Parties to a boundary line dispute action must be coterminous owners, and equity is without jurisdiction in such a proceeding unless the complainant owns land adjoining respondent's at the disputed boundary." Walls v. Bennett, 268 Ala. at 686, 110 So.2d at 280. The claims of the parties in this boundary-line case involve lands described as the northern disputed parcel, the middle disputed parcel, and the southern disputed parcel. The record establishes that Alabama Power and Keller are not the coterminous record title owners of the northern disputed parcel and the middle disputed areas.
On appeal, Alabama Power asserts ownership of the disputed parcels through its chain of title. Although Alabama Power is a grantee in a 1988 deed from Holland Ware that purports to convey all the disputed parcels, including the northern disputed parcel and the middle disputed parcel, we must apply "the fundamental principle that one cannot convey more property than one owns." Hinote v. Owens, 248 So.3d 964, 967 (Ala. 2017). The trial court determined a boundary line as described in the 1942 deed in Alabama Power's chain of title and in the 1953 deed in Keller's chain of title. According to that boundary line, the northern disputed parcel and the middle disputed parcel were not included in the property conveyed in the 1942 deed. As a result, the deeds in Alabama Power's chain of title that follow the 1942 deed merely purport to convey title to the northern disputed parcel and the middle disputed parcel. Because its predecessors did not own those parcels, however, Alabama Power did not acquire title to the northern disputed parcel and the middle disputed parcel through its 1988 deed.
Keller claims ownership of the disputed parcels through his deed, the deeds of his predecessors, and adverse possession.[7] The evidence in the record shows that the description of the property conveyed in Keller's 1988 deed does not include the northern disputed parcel and the middle disputed parcel. In accordance with the trial court's findings, Jim Davis and Annie Davis conveyed the northern disputed parcel and the middle disputed parcel as part of the property described in the 1953 deed to T.R. Allison, which is in Keller's chain of title. Alabama Power argues that the 1953 deed in Keller's chain of title did not convey the northern disputed parcel and the middle disputed parcel because, it asserts, the references to the government survey lines control over the courses-and-distances description in the deed. We need not consider this argument, however, because, as asserted by Alabama Power, the property conveyed by T.R. Allison to Earl *62 Allison, another predecessor in Keller's chain of title, did not include the northern disputed parcel and the middle disputed parcel. The record indicates that the 1969 deed recording that conveyance used a description referencing government survey lines. That description is consistent with the descriptions of the property conveyed in subsequent deeds in Keller's chain of title and in Keller's own deed, and the descriptions in those deeds do not encompass the northern disputed parcel and the middle disputed parcel. Therefore, the evidence in the record regarding Keller's chain of title does not establish that the northern disputed parcel and the middle disputed parcel were conveyed to him.
Keller alternatively asserted an adverse-possession claim against Alabama Power. "Adverse possession becomes a perfect title on the theory that the true owner has by his own fault and neglect failed to assert his right against the hostile holding ...." Prestwood v. Hunt, 285 Ala. 525, 530, 234 So.2d 545, 549 (1970) (emphasis added). Because Alabama Power is not the owner of the northern disputed parcel and the middle disputed parcel, it could not have ceded those parcels to Keller through adverse possession, and the trial court could not have granted such relief. Therefore, Keller could not have obtained ownership of the northern disputed parcel and the middle disputed parcel through adverse possession in this litigation.[8]
In the judgment, the trial court declared that this case was solely a boundary-line dispute and that it adjudicated Keller's adverse-possession claim, among other claims, as required in such a case. Section 35-3-2, Ala. Code 1975, provides:
"Actions may be brought by any person owning land or any interest therein against the owner or person interested in adjoining land to have the boundary lines established; and when the boundary lines of two or more tracts depend upon the same common point, line, or landmark, and action may be brought by the owner or any person interested in any of such tracts, against the owners or persons interested in the other tracts, to have all the boundary lines established. The court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines and shall make such order respecting costs and disbursements as it shall deem just."
As provided in § 35-3-2, the parties in a boundary-line dispute must be owners of coterminous properties.
Without coterminous landowners as parties, a trial court lacks jurisdiction to adjudicate a boundary-line dispute. Walls v. Bennett, 268 Ala. at 686, 110 So.2d at 280. A trial court conducts proceedings in equity to establish a boundary line. Ray v. Robinson, 388 So.2d 957, 962 (Ala. 1980). Section 12-11-31, Ala. Code 1975, provides *63 a circuit court with equity jurisdiction in a boundary-line dispute:
"The powers and jurisdiction of circuit courts as to equitable matters or proceedings shall extend:
"...
"(5) To establish and define uncertain or disputed boundary lines, whether the complaint contains an independent equity or not."
"[U]ncertainty standing alone is not the basis of equity jurisdiction." Mobile Cty. v. Taylor, 234 Ala. 167, 168, 174 So. 301, 302 (1937). "The parties must be coterminous owners," and "if [the parties] are not adjoining property owners they do not have a boundary line dispute which is subject to be determined in equity." Elliott v. Lenoir, 263 Ala. 73, 75, 81 So.2d 274, 276 (1955).
In Elliott v. Lenoir, the deeds in the chains of title of the two parties showed that the parties were not owners of coterminous properties in a portion of the area in dispute and that the portion was owned by a person who was not a party in the case. The judgment in that case established a boundary line and adjudicated adverse-possession claims regarding the entire disputed area. Our supreme court held that the only justiciable controversy in the case concerned the portion of the disputed area in which the parties were coterminous landowners. The supreme court reviewed and affirmed the portion of the judgment regarding an adverse-possession claim and the establishment of a boundary line in that disputed area. The supreme court held that the trial court lacked jurisdiction to enter the portion of the judgment regarding the area in which the parties were not coterminous landowners because the dispute as to that area did not involve a justiciable controversy as a boundary-line dispute.
"[A] lack of justiciability is a jurisdictional defect of which a court must take notice, even ex mero motu." City of Mobile v. Matthews, 220 So.3d 1061, 1064 (Ala. Civ. App. 2016) (citing Baldwin Cty. v. Bay Minette, 854 So.2d 42, 45 (Ala. 2003) ). Because the record in this case establishes that neither Keller nor Alabama Power own the northern disputed parcel and the middle disputed parcel, the parties are not coterminous landowners in those areas. Therefore, there is no justiciable boundary-line controversy regarding those areas, and the trial court lacked the jurisdiction to adjudicate adverse-possession claims as part of a boundary-line dispute in those areas. Accordingly, the portion of the judgment regarding ownership of, and the proper boundaries of, property within the northern disputed parcel and the middle disputed parcel is void, and we do not address Alabama Power's arguments insofar as they pertain to the portion of the judgment addressing those parcels.
In the judgment, the trial court established a boundary line in the southern disputed parcel according to the descriptions in the deeds of Alabama Power and Keller. The descriptions, which reference government survey lines, indicate that the parties' properties are contiguous within the southern disputed parcel. Unlike in the northern disputed parcel and the middle disputed parcel, the record does not indicate that the parties' chains of title failed to convey the portions of the parties' properties involved in the southern disputed parcel. Therefore, the record establishes that Alabama Power and Keller are coterminous landowners in the southern disputed parcel, and that the parties' dispute as to the proper boundary between their properties lying within that parcel presented a justiciable boundary-line dispute. See Elliott v. Lenoir, 263 Ala. at 75, 81 So.2d at 276.
We apply the following standard of review to the trial court's findings *64 regarding the dispute involving property located within the southern disputed parcel:
" 'Where a trial court hears ore tenus testimony [in a boundary-line case], ... its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous.' Bearden v. Ellison, 560 So.2d 1042, 1043 (Ala. 1990). The presumption of correctness accorded to the trial court's findings based on evidence presented ore tenus 'is particularly strong in boundary line disputes and adverse possession cases, and the presumption is further enhanced if the trial court personally views the property in dispute. Wallace v. Putman, 495 So.2d 1072, 1075 (Ala. 1986).' Bell v. Jackson, 530 So.2d 42, 44 (Ala. 1988)."
Shirey v. Pittman, 985 So.2d 484, 486 (Ala. Civ. App. 2007). The trial court located the boundary line based on supporting testimony, documentary evidence, and personal views of the property. We therefore affirm the portion of the judgment regarding the dispute involving property located within the southern disputed parcel.
Alabama Power additionally argues that the doctrine of "clean hands" bars Keller's claim.
"[O]ne 'who seek[s] equity must do equity' and 'one that comes into equity must come with clean hands.' Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237 (1955). The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights 'contrary to equity and good conscience.' Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978). The application of the clean hands doctrine is a matter within the sound discretion of the trial court. Lowe v. Lowe, 466 So.2d 969 (Ala. Civ. App. 1985).
"... '[W]here ore tenus evidence is presented to the trial court in a nonjury case, a judgment based on that evidence is presumed to be correct and will not be disturbed on appeal unless a consideration of the evidence and all reasonable inferences therefrom reveals that the judgment is plainly and palpably erroneous or manifestly unjust.' Arzonico v. Wells, 589 So.2d 152, 153 (Ala. 1991)...."
J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999).
Alabama Power asserts that Keller's agents removed signs posted by the Alabama Department of Conservation and Natural Resources, painted over Alabama Power's boundary-line markers, and painted markers of boundary lines in an effort to substantiate the boundary line sought by Keller. Alabama Power also asserts that Keller attempted to influence the testimony of a witness and that Keller's agent directed a surveyor to omit certain things and to include other things in a possession sketch. Keller disputes Alabama Power's characterization of his conduct toward the witness. He testified that he had merely expressed to the witness his displeasure with a former business partner. Keller also asserts that the requests to the surveyor did not amount to requests that the surveyor provide inaccurate depictions of the land.
Alabama Power alleges that the actions it attributes to Keller were an attempt to mislead the trial court. Whether Keller's actions amounted to an attempt to mislead the court was within the trial court's discretion to determine based on its assessment of the credibility of witnesses, *65 its inspection of the disputed parcels, and the weight it assigned to the evidence. See Vestlake Communities Prop. Owners' Ass'n, Inc. v. Moon, 86 So.3d 359, 367 (Ala. Civ. App. 2011). Although it could have made such a determination, the trial court was not required to find that Keller's actions rose to the level of unconscionable conduct. An appellate court may not reweigh disputed evidence. E.g., Mollohan v. Jelley, 925 So.2d 207, 210 (Ala. Civ. App. 2005). Therefore, the judgment regarding the boundary between the parties' properties located within the southern disputed parcel may not be reversed on this basis.
Conclusion
The record reflects that the claims of Alabama Power and Keller do not involve land owned by either one of them in the northern disputed parcel or the middle disputed parcel. Because the trial court lacked a justiciable boundary-line controversy concerning property located within the northern disputed parcel and the middle disputed parcel, the portion of the judgment regarding those parcels is void, and we dismiss the appeal insofar as Alabama Power seeks a review of that portion of the judgment. See Gulf Beach Hotel, Inc. v. State ex rel. Whetstone, 935 So.2d 1177, 1183 (Ala. 2006) (" ' void judgment will not support an appeal.' " (quoting Baldwin Cty. v. Bay Minette, 854 So.2d at 47 )). In contrast, the record reflects that the claims of the parties did involve land owned by them in the southern disputed parcel. Therefore, the claims regarding property located in that parcel presented a justiciable boundary-line controversy. We hold that the trial court was not compelled to find that the doctrine of unclean hands applied in this case, and we affirm the portion of the judgment pertaining to property located in the southern disputed parcel.
APPLICATION GRANTED; OPINION OF MAY 5, 2017, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED IN PART; AFFIRMED.
Pittman, Thomas, and Moore, JJ., concur.
Thompson, P.J., concurs in the result, without writing.

In the judgment, the trial court described the Bubble-Up as follows:
"There is an unusual natural feature on the disputed territory, which these parties call the 'Bubble-Up.' [Bruce] Allison[, the son of one of Keller's predecessors in interest,] said that he referred to it as the 'head of the creek.' The Bubble-Up appeared to the court to be a 'blue hole' or a place where the water emerges from an underground cave.... The Bubble-Up also spews gravel when the water flows briskly, according to the testimony.... The court observed great amounts of gravel surrounding the Bubble-Up on its first two visits to the property."

In accordance with the record and the trial court's establishment of a boundary line in the southern disputed parcel, "[t]he lands West of the Creek" includes land in Section 31.

The record contains a deed executed in 1969 that conveys property from T.R. Allison to Earl Allison. The 1969 deed does not use a courses-and-distances description as in the 1953 deed from the Davises to T.R. Allison. Instead, the 1969 deed uses the following description referencing government survey lines:
"The West half of Section 31; and the South half of the Northeast quarter of Section 31; and the Northwest quarter of the Northeast quarter of Section 31; all in Township 1 South, Range 6 East; in Jackson County, Alabama, and containing 440 acres, more or less."
Notably, the description does not convey any portion of the northeast quarter of the northeast quarter of Section 31 or any area north of Section 31, respectively comprising the middle disputed parcel and northern disputed parcel, as designated by the trial court. The description in the 1969 deed is consistent with the descriptions in subsequent deeds in Keller's chain of title and Keller's own deed.

As stated in the judgment, "[s]ometime later, Mr. Keller bought Mr. Sanders' share and became the sole owner of the property."

As acknowledged by Alabama Power in its initial brief on appeal, the boundary line established in the southern disputed parcel is primarily based on evidence in the record in accordance with the government-survey-line description in Keller's deed.

Keller agreed at oral argument on the rehearing of this case that the motion to add a reformation claim was not granted by the trial court. Because Alabama Power's defense of the rule of repose was directed to the reformation claim, the application of the rule of repose is not before us in this appeal.

As stated by Keller in oral argument on rehearing of this case and as reflected in the record, reformation of the deeds in Keller's or Alabama Power's chain of title is not at issue on appeal.

Alabama Power argues that the trial court should not have considered Keller's adverse-possession claim as part of a boundary-line dispute because, it asserts, a significant amount of land was claimed. In Dickinson v. Suggs, 196 So.3d 1183 (Ala. Civ. App. 2015), this court held that " 'when a coterminous landowner is claiming to have acquired all or a significant portion of another coterminous landowner's land by virtue of adverse possession,' " the elements of either adverse possession by prescription or statutory adverse possession apply instead of the hybrid form of adverse possession involved in a boundary-line dispute. Id. at 1187 (quoting Buckner v. Hosch, 987 So.2d 1149, 1152 (Ala. Civ. App. 2007) ). Alabama Power further argues that the evidence did not indicate that Keller had satisfied the elements for any type of adverse possession. Because we hold for other reasons that the trial court could not have granted Keller's adverse-possession claim, we pretermit further discussion of Alabama Power's argument.